DJW/bh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**RELIASTAR LIFE INSURANCE COMPANY,**

            **Plaintiff,**

v.

**ALESIA WARRIOR, et al.,**

            **Defendants.**

Civil Action

No. 06-2486-CM-DJW

## MEMORANDUM AND ORDER

On August 22, 2007, the Court held a telephone conference in which it orally ruled on three pending discovery motions. The Court granted Annette Conde's Motion for Protective Order (doc. 21) and Motion to Compel Discovery (doc. 28). In addition, the Court denied Alesia Warrior's Motion to Quash Deposition of John Bryant and Subpoena Duces Tecum (doc. 31). This Order sets forth the Court's reasoning for its rulings.

**I.  Background Information**

This is an interpleader action relating to insurance coverage under an employee welfare benefit plan. Plaintiff issued a group life insurance policy as part of a Universal Underwriters Group employee welfare benefit plan. Defendant Alesia Warrior ("Warrior") participated in the plan and obtained life insurance coverage for her husband, Jeremy Warrior, in the amount of $50,000. Thereafter, Jeremy Warrior was the victim of a homicide, and Warrior submitted a claim for the insurance policy proceeds. Plaintiff paid Warrior $25,000 in proceeds. Prior to paying Warrior the remaining $25,000 in proceeds, Plaintiff conducted an investigation into Jeremy Warrior's death. Plaintiff asserts that during the investigation it learned Warrior has not been ruled out as a suspect

in her husband's homicide, even though Warrior, too, was a victim of the same attack and was allegedly shot by the same person who killed her husband.

Plaintiff has filed this interpleader action, asking the Court to determine who is legally entitled to the insurance proceeds. Plaintiff asserts that under K.S.A. 59-513 and Kansas case law Warrior would be prohibited from receiving the insurance proceeds if she feloniously killed Jeremy Warrior.

In addition to suing Warrior, Plaintiff has sued Annette Conde ("Conde") in her capacity as the guardian for the minor child of Jeremy Warrior and as the mother of Jeremy Warrior. Conde has filed a cross-claim against Warrior to recover (1) the $25,000 in life insurance proceeds that Plaintiff has already paid Warrior, (2) the $25,000 in life insurance proceeds that have been interpled by Plaintiff, and (3) any other life insurance proceeds that Warrior has received as a result of Jeremy Warrior's death. Warrior has filed a counterclaim against Plaintiff to recover the $25,000 in insurance proceeds she claims she is entitled to receive, and for her attorney fees and expenses.

## II.     Conde's Motion to Compel

Conde, in her capacity as guardian for Jeremy Warrior's minor child, moves the Court for an order compelling Warrior to fully answer Conde's First Set of Interrogatories No. 2-4 and 6, and Requests for Production No. 1 and 3-4, and to sign the interrogatory answers. Warrior responded to the interrogatories and requests in part, but objected to providing any information or documents regarding policies issued by any insurance company other than Plaintiff. She objected to providing the requested information and documents on grounds that (1) the requested information and documents are not relevant, (2) the Court lacks subject matter jurisdiction to determine matters in dispute between Conde and Warrior, and (3) the Court lacks personal jurisdiction over any insurance

2

companies other than Plaintiff. The interrogatories were signed by Warrior's counsel, rather than Warrior herself.

Warrior has not filed a response to the Motion to Compel, and, under D. Kan. Rule 6.1(d)(1), the time to do so has passed. Pursuant to D. Kan. Rule 7.4, the failure to file a brief or response within the time specified within Rule 6.1(d) "constitutes a waiver of the right thereafter to file such a brief or response except upon a showing of excusable neglect."[1] The Rule also provides that where a party "fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."[2]

In light of the above, the Court grants Conde's Motion to Compel as unopposed. Warrior's objections to First Set of Interrogatories No. 2-4 and 6, and First Requests for Production No.1 and 3-4 are overruled. Warrior shall serve signed, amended responses to those interrogatories, and shall produce the documents responsive to First Requests No. 1 and 3-4, on or before **September 21, 2007**.

Having granted the Motion to Compel, the Court will now turn to the issue of fees and expenses relating to the filing of the Motion. Pursuant to Federal Rule of Civil Procedure 37(a)(4), when a motion to compel is granted, "the court *shall,* after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that . . . the opposing party's . . . response

---

[1] D. Kan. Rule 7.4.

[2] *Id.*

or objection was substantially justified, or that other circumstances make an award of expenses unjust."[3]

The Court may award fees and expenses under Rule (37)(a)(4) only after the Court has afforded the parties the "opportunity to be heard."[4] A hearing, however, is not necessary, and the Court may consider the issue of sanctions "on written submissions."[5] The "written submission" requirement is met if the moving party requests fees and expenses in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.[6]

Here, Conde has not made a request for an award of attorney fees or expenses. The Court therefore holds that Warrior has not been given sufficient "opportunity to be heard" regarding the issue of fees and expenses. To satisfy the "written submissions" rule, the Court hereby directs Warrior to show cause, in a pleading filed with the Court on or before **October 1, 2007**, why she should not be required to pay the reasonable attorney fees and expenses that Conde incurred in bringing the Motion to Compel. On or before **October 11, 2007,** Conde may file a response thereto, if she so chooses. In the event the Court determines that fees and expenses should be awarded, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Conde has incurred, and for the filing of any related briefs.

---

[3] Fed. R. Civ. P. 37(a)(4)(A) (emphasis added).

[4] *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) (citing Fed.R.Civ.P. 37(a)(4)).

[5] *Id.* (citing Advisory Committee Notes to the 1993 Amendments to Rule 37(a)(4)).

[6] *Fears v. Wal-Mart Stores, Inc.*, No. 99-2525-JWL, 2000 WL 1679418, at *6 (D. Kan. Oct. 13, 2000).

### III. Warrior's Motion to Quash Deposition of John Bryant or Alternatively for Protective Order; Conde's Motion for Protective Order

On February 27, 2007, Conde issued a subpoena duces tecum to John Bryant, Assistant District Attorney of Wyandotte County, Kansas. The subpoena requested that Mr. Bryant bring the "[e]ntire file in the investigation of the death of Jeremy Warrior including, but not limited to, all statements taken, all documents of the law enforcement agency investigation [sic] the case, and all photographs."[7]

Shortly after receiving the subpoena, Mr. Bryant contacted Conde's counsel and informed him that the Wyandotte County District Attorney believes that the subpoenaed file contains documents that are not open records under the Kansas Open Records Act, K.S.A. 45-221(a)(10) and that he would therefore not produce the file in response to the subpoena. Mr. Bryant did, however, agree to make the file available for Conde's *inspection*. In response to that offer, Conde withdrew the subpoena and met with Mr. Bryant to inspect the file. According to Conde, the file was too voluminous to hand-copy, and the District Attorney would not allow certain documents to be photocopied.

Conde's counsel proposed to the District Attorney's office that counsel could prepare a protective order to protect the confidentiality of the investigative file and that Conde could serve another subpoena duces tecum on Mr. Bryant to obtain the file. Mr. Bryant apparently told Conde's counsel that he would not object to being deposed pursuant to a subpoena duces tecum so long as the subpoenaed file was subject to an appropriate protective order.

Conde's counsel has drafted a protective order to protect against disclosure of the District Attorney's file outside of this lawsuit. Counsel for Warrior, however, has objected to the proposed

---

[7]*See* Subpoena and Return of Service (doc. 19).

protective order because Warrior believes the file contains documents that are not open records under the Open Records Act and should therefore not be produced even to the parties in this case. After the parties were unable to resolve the issue, Conde filed the instant Motion for Protective Order on April 9, 2007.

On April 27, 2007, while the Motion for Protective Order was still pending, Conde filed a notice to take Mr. Bryant's deposition on May 24, 2007 ( doc. 25). She also served a subpoena duces tecum on him on May 7, 2007 (doc. 30). On April 28, 2007, Warrior filed her motion to prevent the deposition from going forward. Warrior's motion requests that the Court quash the subpoena, or, in the alternative, enter a protective order precluding Conde from deposing Mr. Bryant and obtaining the subpoenaed file.

Warrior contends that the subpoenaed documents are not public records under the Kansas Open Records Act and should therefore not be disclosed. She argues that disclosure of the file would not be in the public's interest and might place her at risk, as the police have yet to charge, and place in custody, the person who shot her and her husband.

Conde counters that Warrior lacks standing to object to the subpoena. She also argues that the investigation of Jeremy Warrior's homicide will not be jeopardized by the production of the file because the protective order she has proposed will prevent any potentially damaging information from being disclosed to the public.

### A.     Should the Subpoena Be Quashed?

Before the Court turns to the merits of the parties' arguments regarding quashing the subpoena, the Court must first determine whether Warrior has standing to move to quash it. Generally speaking, a party to the lawsuit does not have standing to quash a subpoena served on a

6

nonparty.[8] A motion to quash a subpoena "may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena."[9]

Thus, for Warrior to bring this motion to quash, she must have a personal right or privilege with respect to the subject matter of the documents requested in the subpoena. The Court concludes that Warrior does have such a personal right, as the investigative file contains information pertaining to the alleged murder of Warrior's husband and to the shooting of Warrior in the same attack.[10] The Court finds this sufficient to confer standing on Warrior to move to quash the subpoena.

The Court will now turn to the merits of the parties' arguments as to whether the subpoena should be quashed. Federal Rule of Civil Procedure 45(c)(3)(A) sets forth the grounds upon which the Court must quash a subpoena. It provides, in pertinent part, that a court "shall quash or modify [a] subpoena if it . . . requires disclosure of privileged or other protected matter and no exception

---

[8]*Stewart v. Mitchell Transport*, No. 01-2546-JWL, 2002 WL 1558210, at *1 (D. Kan. July 8, 2002); *Johnson v. Gmeinder*, 191 F.R.D. 638, 640 n. 2 (D. Kan. 2000); *Hertenstein v. Kimberly Home Health Care, Inc*., 189 F.R.D. 620, 635 (D. Kan. 1999).

[9]*Stewart*, 2002 WL 1558210, at *1 (quoting *Smith v. Midland Brake, Inc*., 162 F.R.D. 683, 685 (D. Kan. 1995))..

[10]*See id.* at *2 (holding defendant employee had personal right with respect to information contained in his former employer's personnel file, and therefore had standing to move to quash subpoena of personnel file); *Zhou v. Pittsburg State Univ*., No. 01-2493, 2002 WL 1932538, at *1 (D. Kan. July 25, 2002) (defendant employer had personal right with respect to EEOC investigative file regarding discrimination charge lodged against defendant, and therefore defendant had standing to move to quash subpoena of said file).

or waiver applies."[11]  The party moving to quash a subpoena has the burden to demonstrate good cause and the privilege to be protected.[12]

As noted above, Warrior contends that the Open Records Acts, K.S.A. 45-215, *et seq.*, (the "Act") precludes disclosure of the investigative file.  She contends that the criminal investigation records exception found at K.S.A. 45-221(a)(10) applies.  That section provides as follows:

> (a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:
>
> . . . .
>> (10) Criminal investigation records, except as provided herein. The district court, in an action brought pursuant to K.S.A. 45-222, and amendments thereto, may order disclosure of such records, subject to such conditions as the court may impose, if the court finds that disclosure:
>>
>> (A) Is in the public interest;
>>
>> (B) would not interfere with any prospective law enforcement action, criminal investigation or prosecution;
>>
>> (C) would not reveal the identity of any confidential source or undercover agent;
>>
>> (D) would not reveal confidential investigative techniques or procedures not known to the general public;
>>
>> (E) would not endanger the life or physical safety of any person; and
>>
>> (F) would not reveal the name, address, phone number or any other information which specifically and individually identifies the victim of any sexual offense in article 35 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto.[13]

---

[11]Fed. R. Civ. P. 45(c)(3)(A)(iii).  The other grounds for quashing a subpoena (e.g., undue burden, failure to allow reasonable time for compliance) are not asserted here and therefore need not be addressed.

[12]*Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996).

[13]K.S.A. 45-221(a)(10).

8

More specifically, Warrior argues that the subpoena should be quashed because the documents contained in the investigative file "are not public records under the Kansas Open Records Act, K.S.A. 45-221(a)(10), and are not intended to be disclosed."[14]  The Court is not persuaded by Warrior's arguments for several reasons.

First, the Court does not find the Act to be controlling in this case.  This is a federal question case arising under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*.  The case also involves a pendent cross-claim brought by Conde under state law.  It is well settled that in federal question cases with pendent state law claims, the federal court must look to the federal common law regarding the existence of privileges.[15]  In this district, courts have held that state statutes creating privileges as to certain records or documents are not controlling in federal question cases.[16]  In accordance with this general principle, this Court held in *Ledbetter v. City of Topeka, Kansas*,[17] that K.S.A. 45-221 does not establish in a federal question case the existence of privilege in certain records covered by the Act.  More specifically, the Court held that K.S.A. 45-221(a)(4)[18] did not create a recognizable privilege under Rule 45(c)(3)(A) for the personnel records

---

[14]Def.'s Mem. in Supp. of Mot. to Quash (doc. 32) at p. 2.

[15]*Ledbetter v. City of Topeka, Kan.*, No. 99-2489-CM, 2001 WL 311196, at *2 (D. Kan. Mar. 7, 2001); *Ali v. Douglas Cable Commc'ns Ltd. P'ship*, 890 F.Supp. 993, 994 (D. Kan. 1995).

[16]*Ledbetter*, 2001 WL 311196, at *2; *Ali,* 890 F.Supp. at 994.

[17]*See* 2001 WL 311196, at *2.

[18]That subsection of the Act provides that a public agency is not required to disclose personnel records, performance ratings or individually identifiable records pertaining to employees, except to the extent disclosure is otherwise required by law.

of public employees.  The Court therefore held that the State of Kansas was not entitled to have a subpoena for personnel records quashed.[19]

Even if the Court were to recognize a privilege created by the Act in this federal question case, the Court would not apply it here because, as discussed below, the privilege runs only to the public agency whose records are being subpoenaed.  The privilege does not run to a third party who wants to prevent disclosure of the records.

The starting point for understanding the Act is K.S.A. 45-216, which states as follows:  "It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act."[20]  K.S.A. 45-216 further states that the Act "shall be liberally construed and applied to promote such policy."[21]

The Kansas Supreme Court discussed the Act at length in *Harris Enterprises, Inc. v. Moore*,[22] a case in which a newspaper publisher filed an action to obtain the release of criminal investigation records after the district attorney denied the publisher's request for inspection.  The court first noted the Act's general principle that public records are to be open for inspection unless the Act specifically provides otherwise.[23]  The court then recognized that the Act contains certain exceptions to that general rule.  The court explained:  "K.S.A. 45-221(a) sets out in some detail

---

[19]*Ledbetter*, 2001 WL 311196, at *2.

[20]K.S.A. 45-216(a).

[21]*Id.*

[22]241 Kan. 59, 734 P.2d 1083 (1987).

[23]*Id.* at 63.

thirty-five categories[24] of records which public agencies are not *required* to disclose. Thus, the act does not prohibit disclosure of records contained within these exceptions, but rather makes their release discretionary with the official records custodian."[25]

Applying these rules to the instant case, the Court finds K.S.A. 45-221(a) to be inapplicable. In this case, it is the records custodian of the Wyandotte County District Attorney's office who has the discretion, under K.S.A. 45-221(a)(10), to determine whether to disclose the criminal investigation records at issue. If the Wyandotte County District Attorney's office makes the decision not to disclose such records, then the party requesting to inspect the records may bring an action under the Act to seek disclosure of such records. If a court were to find that the enumerated conditions of subsection (a)(10) warranted disclosure, the court would then have the power to require the District Attorney's office to make the records available. On the other hand, if the District Attorney's office makes a decision to produce or make the records available for inspection, it may do so, and nothing in K.S.A. 44-221(a)(10) *prohibits* the District Attorney's office from doing so.

Here, the Wyandotte County District Attorney's office has apparently agreed to disclose the investigative file in response to Conde's subpoena, subject to an appropriate protective order. As the agency has made that decision, the Open Records Act cannot be used by Warrior to prevent that disclosure.

---

[24]The current version of K.S.A. 45-221 now sets forth forty-seven categories of records that public agencies are not required to disclose.

[25]*Harris,* 241 Kan. at 63-64 (emphasis in original).

In light of the foregoing, the Court finds no privileged or protected matter that requires the subpoena to be quashed under Rule 45(c)(3)(A). The Court must therefore deny Warrior's motion to the extent she seeks to quash the subpoena.

### B.     Should a Protective Order Be Entered?

In the alternative, Warrior seeks a Rule 26(c) protective order precluding the deposition and discovery of the investigative file from going forward. Federal Rule of Civil Procedure 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense." The Court cannot find that Warrior has made any such showing. Thus, there is no basis upon which the Court may enter a Rule 26(c) protective order to preclude the deposition duces tecum from going forward.

This does not mean, however, that the Court is unable to address Warrior's concerns that disclosure of the investigative file might place Warrior in jeopardy because the perpetrator of her husband's murder is still at large. Due to the potential risk to Warrior, and possibly others, and because of the confidential nature of the investigative file, the Court will order that the file be produced pursuant to a protective order limiting the parties' use of the documents to this litigation only and prohibiting their disclosure to anyone outside this litigation. The Court therefore grants Conde's Motion for Protective Order.

While Conde did not attach a copy of the proposed Protective Order to her motion, her counsel did e-mail the undersigned and opposing counsel a copy of the proposed order. The Court finds that the proposed order needs to be revised in light of the Court's rulings herein regarding the Kansas Open Records Act. The Court also find that additional revisions of a minor nature are

needed.[26] The Court has made those revisions to Conde's proposed order, and the revised Protective Order will be issued contemporaneously with this Memorandum and Order.

**IT IS THEREFORE ORDERED** that Annette Conde's Motion to Compel Discovery (doc. 28) is granted, and Alesia Warrior shall serve her signed answers to Annette Conde's First Set of Interrogatories 2-4 and 6, and produce the requested documents in response to First Requests No. 1 and 3-4, on or before **September 21, 2007.**

**IT IS FURTHER ORDERED** that Alesia Warrior shall show cause, in a pleading filed with the Court on or before **October 1, 2007**, why she should not be required to pay the reasonable expenses and fees that Conde incurred in bringing her Motion to Compel. Annette Conde shall have until **October 11, 2007,** within which to file a response thereto.

**IT IS FURTHER ORDERED** that Alesia Warrior's Motion to Quash Deposition of John Bryant and Subpoena Duces Tecum (doc. 31) is denied.

**IT IS FURTHER ORDERED** that Annette Conde's Motion for Protective Order (doc. 21) is granted. A modified version of Conde's proposed Protective Order will be issued in a separate Order.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 7th day of September 2007.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:   All counsel and *pro se* parties

---

[26]For example, the proposed Order states that "*Plaintiff* seeks to obtain information and criminal investigation records from the law enforcement agencies . . . ." This reference to Plaintiff is incorrect, in that it is *Conde* who seeks the records.